603 F.2d 255
 Mary TOMANIO, Plaintiff-Appellee,
v.
The BOARD OF REGENTS OF the UNIVERSITY OF the STATE OF NEW
YORK, and Ewald Nyquist, as Commissioner of Education and
Chief Administrative Officer of the Education Department of
the State of New York, Defendants-Appellants.
 No. 798, Docket 78-7637.
 United States Court of Appeals,
Second Circuit.
 Argued March 20, 1979.
Decided June 19, 1979.
 
 Donald O. Meserve, Albany, N. Y. (Jean M. Coon, Deputy Counsel, Albany, State of New York, of counsel) for defendants-appellants.
 Vincent J. Mutari, Garden City, N. Y., for plaintiff-appellee.
 Before OAKES and LUMBARD, Circuit Judges, and BRIEANT, District Judge.*
 BRIEANT, District Judge:
 Appellants (hereinafter "the Board of Regents" or "the Regents") seek to review a final judgment of the United States District Court for the Northern District of New York, James T. Foley, Chief Judge, which declared the Regents had violated plaintiff-appellee's civil rights. The Regents urge that the district court erred in holding that under the circumstances detailed below, appellee was entitled to an impartial hearing and statement of reasons for denial of her application for a waiver of state professional licensing requirements, as authorized by New York Education Law, § 6506(5). The Regents also claim the action should have been dismissed as Res judicata by reason of a state court judgment, and that it was time barred. Finding no merit in any of these contentions, we affirm.
 Effective July 1, 1963, the profession of chiropractic came under licensure by the Regents as a result of Chapter 780, Et seq. of the New York Laws of 1963, now codified as amended in §§ 6552, Et seq. of Title 8 of the New York Education Law. Current practitioners of chiropractic on that date were permitted to qualify under the less stringent provisions of former § 6556 of the New York Education Law. This "grandfather" provision, as it was characterized below, required passing an examination in the practice of chiropractic, and if the applicant wished to use X-ray, a further examination in its use and effect. As to current practitioners, § 6506(5) authorized waiver of "education, experience and examination requirements for a professional license . . . provided the Board of Regents shall be satisfied that the requirements of such Article have been substantially met."
 Plaintiff-appellee took the special examinations intended for current practitioners and passed all subjects except chemistry and X-ray. Chemistry was mandatory, although, as noted above, a limited license excluding use of X-ray can be obtained without a passing mark in that field. Computing her test scores in the manner permitted by the New York State Education Department's regulation on grade averaging (8 N.Y.C.R.R. § 73.3) appellee's failure in the science part of the examination which includes chemistry was measured by a margin of six tenths of one percent. She received passing scores in all other subjects.
 Appellee, 58 years old at the time of her hearing in the district court, was licensed to practice her profession in Maine and New Hampshire, and has also passed an examination given by the National Board of Chiropractors. On September 21, 1971, she applied for a waiver under § 6506(5) quoted above. This application was denied November 19, 1971 without a hearing and without any statement of reasons.
 As to whether the federal claim is time barred, we conclude the district court did not abuse its discretion in determining that the statute of limitations was tolled for a period commencing January 26, 1972, when appellee filed a timely proceeding in the New York State Supreme Court pursuant to Article 78 of the New York CPLR to set aside the denial of waiver by the Regents as arbitrary and capricious and order issuance of a license to practice chiropractic. That petition, which pleaded no federal constitutional claims, was granted at Special Term of the New York Supreme Court, but the order was later reversed on appeal. It was not until November 20, 1975 that the New York Court of Appeals affirmed the order of the Appellate Division of the Supreme Court holding that as a matter of state law the Board of Regents had not abused its discretion in denying the waiver. Tomanio v. Board of Regents, 38 N.Y.2d 724, 381 N.Y.S.2d 37, 343 N.E.2d 755 (1975), Aff'g. mem. 43 A.D.2d 643, 349 N.Y.S.2d 806 (3rd Dept. 1973). Appellee was diligent in pressing her claims. Her state litigation was initially successful. It was not until after the three year statute of limitations had expired that the state litigation was finally resolved against appellee. She filed this action on June 25, 1976, some seven months later. This Court has recognized the propriety, under such circumstances, of tolling the statute in the interests of advancing the goals of federalism. Williams v. Walsh, 558 F.2d 667, 674 (2d Cir. 1977); Ornstein v. Regan, 574 F.2d 115, 119 (2d Cir. 1978).
 As the federal constitutional claim was not raised or litigated in the state proceeding, it was not barred in the federal court by the doctrine of Res judicata.[1] Ornstein v. Regan, supra at 117; Winters v. Lavine, 574 F.2d 46 at 56-58 (2d Cir. 1978) and cases therein cited.
 By its plain meaning, the waiver provision of New York State Education Law § 6506(5) is applicable to appellee's factual situation. That this is true was implicitly conceded in the opinions in appellee's state court proceedings cited above. This being so, before such a waiver could be denied to one already practicing her profession, appellee was and is, under the circumstances of this case, entitled to an adjudicative hearing before the Board of Regents, or its duly designated impartial hearing officer, and if waiver be denied, is also entitled to a statement of reasons for the denial.
 Doubtless procedural due process requirements would be satisfied were licensure made dependent solely on passing a fairly written examination reasonably related to the required skills, with those who flunk cast out of their profession. In this case, those who flunk may be admitted nonetheless by waiver, the granting or withholding of which is entrusted to the Regents on statutory criteria as broad and vague as that found in Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963). Where, as here, such broad discretionary power is granted to admit or deny entrance or continuance in a learned profession, it "must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process." Goldsmith v. Board of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 217, 70 L.Ed. 494 (per Ch. Justice Taft, 1926).
 
 
 1
 The adjudicative fact to be determined in considering whether to grant a waiver is not whether Dr. Tomanio may practice her profession in New York, as she can do in Maine and New Hampshire, as a matter of grace from her sovereign or at the whim of the Regents. Rather, it is whether, notwithstanding her narrow failure of the examination, she "substantially" meets licensure requirements. Of course the state legislature need not have provided for any waiver of the examination. But once it did so, denial of the waiver implicates procedural due process rights. An adjudicative fact of such significance to appellee's interests cannot, in logic or constitutionally, be resolved without a hearing before an impartial fact finder, followed by a statement of reasons in the event of denial. This is so because the interest of a current practitioner of the healing arts in the continued practice of her profession is a property right within Fourteenth Amendment protection as defined in Board of Regents v. Roth, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and may also be "liberty" within the same provision. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). See also, Board of Curators, University of Missouri v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) and Friendly, "Some Kind of Hearing" 123 U.Pa.L.Rev. 1267, 1296-97 (1975). The judgment appealed from merely declares such right. Whether, following an impartial hearing, appellee would be entitled to a waiver was not determined below, nor could it be in the absence of such hearing.[2]
 
 LUMBARD, Circuit Judge (dissenting):
 
 2
 I would reverse the judgment of the district court and dismiss the complaint.
 
 
 3
 Plaintiff brought this action in the United States District Court for the Northern District of New York, contending that defendants' refusal to issue a license to practice chiropractic in the State of New York deprived her of property without due process in violation of the Fourteenth Amendment. She requested an injunction directing that she be permitted to practice chiropractic in New York. Defendant answered and moved for summary judgment dismissing the complaint.
 
 
 4
 The district court awarded judgment for the plaintiff, declaring that defendant's failure to provide a hearing on plaintiff's application for a waiver of the examination requirement deprived her of her livelihood without due process. The court did not grant any affirmative relief, but issued a declaratory judgment stating that the plaintiff's due process rights had been violated and that she was entitled to an administrative hearing. Defendants appealed.
 
 
 5
 New York's chiropractic licensing statute was enacted as Chapter 781 of the Laws of 1963, to take effect July 1, 1963. Plaintiff has been practicing chiropractic since 1958. The statute provides general licensing requirements for new applicants, including, inter alia, examination requirements. The statute also includes a generous "grandfather" provision, allowing an alternative method of qualifying for persons already practicing chiropractic on the effective date of the statute. Plaintiff has taken the examinations under the less rigorous provisions of the grandfather clause on six occasions, the last time in 1971, but has never achieved a total accumulated score sufficient to pass even under this lesser standard. Plaintiff has also taken and failed the regular licensing examination. She nevertheless remains eligible to take and pass the regular licensing examination.
 
 
 6
 After failing to pass the required examination on her seventh attempt, plaintiff applied for a waiver of the examination requirement under a general provision of the Education Law, applicable to all professions, allowing the Board of Regents, in its discretion, to waive specific requirements for licensing "provided the Board of Regents shall be satisfied that the requirements . . . have been substantially met." Education Law Section 6506, subdivision 5. This statute makes no provision for a hearing on an application for a waiver. The Board of Regents, after considering plaintiff's request for a waiver, denied her application.
 
 
 7
 Plaintiff then brought a proceeding in the state courts pursuant to Article 78 of the New York Civil Practice Law and Rules, seeking to compel the Board of Regents to waive the examination requirement in her case and to issue her a license. Supreme Court, Albany County, entered judgment for plaintiff, without opinion. The Appellate Division, Third Department, reversed in a unanimous opinion, on the ground that the authority to give a waiver is "permissive, not mandatory":
 
 
 8
 "A review of the applicant's record on the chiropractic examinations and the fact that she failed seven examinations in as many attempts provides ample justification for the Regents' failure to exercise the discretion granted to them and removes any doubt that their action was arbitrary or capricious . . . (h)ad the board waived the requirements on the record here, it would have abdicated its delegated responsibility, made our licensing provisions meaningless, and indirectly discriminated against the countless numbers who have taken this State's licensing examinations and barely failed." 43 A.D.2d 643, 349 N.Y.S.2d 806 (1973).
 
 
 9
 The Court of Appeals affirmed the Appellate Division in a second unanimous opinion, on the ground that "(t)he refusal of the Board of Regents to waive the examination required by statute was not, as a matter of law, an abuse of discretion." 38 N.Y.2d 724, 381 N.Y.S.2d 37, 343 N.E.2d 755 (1975). Plaintiff then brought suit in federal court and obtained the declaratory judgment on appeal here.
 
 
 10
 The Fourteenth Amendment requires that no state "deprive any person of life, liberty, or property, without due process of law." Courts have construed this clause to mean that when the state takes a person's property, it must adhere to recognized principles of substantive and procedural law. Thus when any significant property interest, such as a person's entitlement to earn a living as a chiropractor, is taken, that person is entitled to a hearing and a right to be heard. The type of hearing that is required in a particular situation depends on all the circumstances. I would hold with the New York Court of Appeals that in the context of professional licensing, a regularly and fairly administered examination procedure satisfies plaintiff's due process right to be heard. Here the plaintiff does not challenge the fairness of the examination itself, the way in which it was given, or the way in which it was graded.
 
 
 11
 I do not believe that due process requires, in addition to a fair examination, a special hearing to determine whether the examination should be waived for applicants who have failed it. Where a law or regulation, such as the regulation setting up minimum passing grades here, has been validly promulgated for a legitimate public purpose and the complainant admittedly falls within the ambit of that regulation, enforcement without exceptions does not violate due process.
 
 
 12
 Even after taking account of the importance of plaintiff's property interest, the public interest in an objective and impartial method for certifying chiropractors fully justifies exclusive reliance on an examination procedure such as New York provides. Although we may sympathize with the plight of those who fail professional examinations, those examinations are required for a reasonable and valid public purpose: to determine who is qualified to practice a particular profession. In this case, the qualifying examination which the appellant has repeatedly failed is the principal means for protecting a public which cannot by itself adequately verify the credentials of those chiropractors they turn to in time of need.
 
 
 13
 That the State of New York has gone beyond the requirements of due process, as fulfilled by a fair examination, and has provided for the possibility of a waiver in the discretion of the Board of Regents, should not change the result. The addition of a waiver procedure which is not required by due process does not require a further hearing where a further hearing would not otherwise be required. Plaintiff, moreover, has not shown any unfairness either in the processing of the examination or in the decision to deny her a waiver. Plaintiff does not suggest any reason why the Board would or should grant a waiver. In short, she has not been deprived of any right by reason of not being allowed to appear before the Board.
 
 
 14
 Plaintiff might have made out a case on her right to receive a waiver, or at least on her right to a hearing before one was denied, had she shown that the state had granted waivers to others who had failed the examination and that there were no discernible standards for distinguishing her from those who had received the waivers. But plaintiff has made no such showing. In fact, she has not shown us one case where anyone who has failed the examination has been given a waiver relieving them of the consequences. Indeed, although the waiver provision theoretically includes waivers for failure to pass the examination, it is more clearly aimed at waiver of requirements less directly related to competency, such as residence or citizenship. Accordingly, that the letter of the law was applied to appellee as the legislature contemplated does not make out arbitrary and capricious action amounting to a violation of due process.
 
 
 15
 Finally, in the absence of a violation of due process (such as does not exist here), I do not think that the federal courts should interfere with state licensing procedures especially to require the state to hold a hearing in a case where no good reason is shown for holding one.
 
 
 16
 If we were to affirm the district court's notion that the plaintiff is entitled to a hearing, we would be suggesting resort to the federal courts whenever a state agency fails to license someone who fails to qualify. We would not only interfere with what is exclusively a state function, we would also encourage frivolous and needless litigation.
 
 
 17
 If New York opts for strict observance of its licensing laws it is not the proper business of the federal courts to decide how, if at all, strict observance should be tempered by a waiver procedure, so long as the administration of the state system does not offend equal protection or due process. For one, two or even three federal judges to second-guess twelve New York appellate judges on a question of this nature is offensive to accepted principles of federal-state comity as well as to common sense and judicial modesty.
 
 
 
 *
 Honorable Charles L. Brieant, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Nor are we, as the dissent suggests, second guessing twelve New York appellate judges, which, were it so, would indeed be "offensive to accepted principles of federal-state comity, . . . common sense and judicial modesty." The rule of this Court, stated in Lombard v. Board of Education, 502 F.2d 631, 635 (2d Cir. 1974) allows a civil rights plaintiff to split his cause of action, litigate state claims in the state court, lose, and then start all over again in federal court, asserting his constitutional or federal civil rights claims arising out of the same facts. Because, as in Lombard, appellee did not raise her federal constitutional rights in the state courts, none of the twelve New York judges passed on them
 
 
 [2]
 The dissent notes that "(p)laintiff does not suggest any reason why the Board would or should grant a waiver." A logical argument can be made that since Dr. Tomanio is licensed in two other states, has practiced successfully for so many years, and passed her National Boards, she might be able to convince an impartial hearing officer that she "substantially" meets the requirements of the statute, notwithstanding her failure of the examination by six-tenths of one percent. We express no opinion on the point except that Dr. Tomanio's right to due process would seem, under these facts, independent of her likelihood of success at a hearing